Morse et al. *vs.* Crofoot et al.

The complainants together with one T. and as his sureties executed a promissory note to C. alledged to be void for usury. An action at law was brought on the note in the name of M. against all the makers, and they pleaded thereto. T. the principal, after issue joined, obtained a discharge as a bankrupt, which he thereupon pleaded *puis darrein continuance,* and issue was taken on that plea. The complainants thereupon filed their bill for the purpose of procuring the evidence of T. in order to establish the usury and obtain relief against the note, alledging among other things, that neither the usurer nor the borrower could be called as a witness at law. *Held,* that T., the borrower, being still a party to the action on the note, and not having released the surplus of his effects in bankruptcy was interested, and incompetent as a witness, to sustain the bill.

A discharged bankrupt, it seems, is not a competent witness for his sureties in a suit instituted by them to avoid the debt, unless he has released the surplus of his effects.

It is the duty, it seems, of an assignee to whom a debtor has made a general [115] assignment of his property for the payment of his debts, to refuse to pay such debts as are infected with usury, although they are in the preferred class and are directed to be paid.

ELLIS MORSE, Alpheus Morse and James McConnell, filed their bill in the late court of chancery, before the vice chancellor of the seventh circuit, against David Crofoot, Edward B. Miller and James Crofoot. The case was this : In April, 1837, the complainants with one Sylvester Thayer and as his sureties, executed to the defendant, David Crofoot, a note for $1200, payable in one year. The consideration was money borrowed of Crofoot by Thayer. The bill alledged that the loan was usurious, and the note for that reason void. In January, 1842, a suit at law was commenced on the note in the name of the defendant Edward B. Miller against all the makers. The complainants pleaded the general issue in that suit. Thayer also separately pleaded the general issue in the first instance. In June, 1842, Thayer was duly discharged as a bankrupt from all his debts, according to the late act of congress, and thereupon he pleaded his discharge *puis darrein continuance.* The plaintiff in that suit replied, denying merely the fact of the discharge, but not in any wise impeaching the validity thereof. When the bill was filed, in September, 1842, the suit at law was noticed for trial against all the defendants therein, at the Cortland circuit to be held in October following.

It was alledged in the bill that David Crofoot was the real owner of the note; that Miller the plaintiff in the suit at law, had no interest therein ; that the usury was known only to David Crofoot and Thayer, and that issue had been taken in the suit at law on Thayer's plea of bankruptcy for the purpose of excluding him as a witness. The bill also insisted that D. Crofoot being the real plaintiff in that suit could not be called as a witness to prove the usury ; also that Thayer could not be called for the reason that he was a party of record although he was discharged from all liability. It was insisted, however, that in equity, Thayer having no interest since his discharge, could be called as a witness to establish the usury. The bill was filed

[116] therefore, for the purpose of procuring his testimony, and obtaining relief against the note, and for a perpetual injunction against the further prosecution of the suit at law against the complainants.

The defendants D. Crofoot and Miller answered the bill, denying the usury and stating that in January, 1842, D. Crofoot sold the note to his father, James Crofoot, who was alledged to be the owner. James Crofoot was thereupon brought in as a party by amending the bill, and he answered in substance as the other defendants had done. Replications were filed, and the usual order to take proofs before an examiner was entered. The said Sylvester Thayer was called as a witness before the examiner on behalf of the complainants, but was objected to on the ground of interest. The discharge in bankruptcy granted to Thayer was thereupon duly proved, and the plaintiffs released him from all liability over to them as his sureties in respect to the note in question. He was thereupon admitted as a witness (the defendants still objecting on the ground of interest) and gave evidence of the usury as alledged in the bill.

The cause was brought to a hearing on the pleadings and proofs before the vice chancellor, and the deposition of Thayer was *received and read on that hearing.* Depositions were also read on the part of the defendants, tending to repel the allegation of usury. It also appeared on the proofs, that in October, 1837, Thayer had failed in business, and made a general assignment of all his property in trust for the payment of his debts, in which assignment he placed the note in question in the preferred class of debts, and directed it to be paid. The vice chancellor dismissed the bill with costs, and his decree was affirmed by the supreme court sitting in the seventh district, on the ground solely that Thayer was an incompetent witness, and without him there was no sufficient evidence of the usury. The complainants appealed to this court.

*Geo. F. Comstock,* for appellants. I. The principle of the bill is sound. Thayer could not be called as a witness at law, and it [117] was therefore a proper case for a resort to equity to obtain

the benefit of his evidence. (1 *Sandf. Ch. Rep.* 188; 1 *Barb. Ch.* 404; 7 *Paige,* 451, 460; 5 *id.* 249; 4 *Hill,* 549; 3 *id.* 106.) Nor upon the statement in the bill could Crofoot be called as a witness at law, according to the doctrine prevailing in courts of law at that time. The circumstance that the doctrine was some time afterwards unsettled in the court of errors, does not change the case. (1 *Hill,* 555; 4 *id.* 523.) According to the statements in the answer he was certainly privileged, for the reason that he would be a mere witness (not a party) to establish an usurious agreement. (*Kempshall* v. *Burns,* 24 *Wend.* 360; *S. C. in Error,* 4 *Hill,* 468; 4 *Wend.* 236, 252, 254; *Salina Bank* v. *Henry,* 1 *Comst.* 83; 19 *Ves.* 225; 3 *Taunt.* 424.) But if Crofoot was not privileged, the complainants were not bound to rely upon him. According to the statement of the bill, he was the party in interest. According to the answer he had sold the note, and of course had warranted it to be free from usury. The complainants had a right to resort to chancery for the purpose of procuring the testimony of a disinterested and impartial witness.

The bill is not liable to the objection that Thayer should be a party. By his discharge as a bankrupt he was relieved of all liability on the note, or over to his sureties. As he therefore needs no relief in equity he has no right to ask it. Furthermore, by his plea *puis darrein continuance,* he renounced his defence of usury at law, and can therefore never litigate that defence in equity. The grounds of relief set up in the bill are therefore peculiar to the appellants, and this brings the case within the principle of several cases already cited.

II. The testimony of Sylvester Thayer was read on the hearing before the vice chancellor. The question of his competency, therefore, was not before the supreme court for review, and is not now before this court. If the evidence was objected to at all before the vice chancellor, he decided against the objection and that decision has never been appealed from.

III. But Thayer was a competent witness for the appellants. In October, 1837, he made a voluntary assignment of all his property in trust to pay his debts. He placed the note in question

[118] in the preferred class, and directed it to be paid. In the absence of proof there is no presumption that this debt will not be fully paid out of that fund. But that must be shown or presumed before the debt can be treated as a charge on the funds in the hands of the assignee in bankruptcy. (*Duel* v. *Fisher,* 4 *Denio,* 515; *Cowen & Hill's Notes,* 256, 477, 1501, 1539, 1541.) The principle on which the objection rests is that the bankrupt was called to avoid a debt, and thus to increase the surplus of his effects. Unless therefore the debt is shown, or. can be presumed to be a charge on the fund, the objection fails. There is no proof of the state of the fund in the hands of his assignee in bankruptcy. The rule of evidence now leans to competency, and admits of no mere presumption in relation to the fund for the purpose of excluding the witness. Before the objection therefore can prevail it must be shown that there would be a surplus remaining for Thayer of his effects in the hands of the assignee.

IV. It is submitted that the evidence, oral and written, leaves no rational doubt that the note is usurious. The decree, therefore, of the courts below should be reversed, and a decree entered according to the prayer of the bill.

*C. B. Sedgwick,* for respondents. I. Thayer was incompetent on the ground of interest, he not having released his interest in the surplus of the fund, created by his assignment of 1837, nor under the bankrupt law; and the objection is good without showing that there will be a surplus. (*Butcher* v. *Forman and Johnson,* 6 *Hill,* 583; 1 *Cowen & Hill's Notes,* 117, 118, 262; *Graves* v. *Delaplaine,* 14 *John.* 146; *Greenl. on Ev.* 392; 2 *Phillips' Ev.* 353, 354.) A suit at law is pending against Thayer and the other makers of the note in question; and one object of this bill is to defeat that suit, and cancel the note in question; he is therefore directly interested to accomplish that object. His discharge is pleaded at law, and issue taken thereon, and he can not testify in the suit, contingently. His interest is such that he should have been made a party to this bill, because [119] he was one of the makers of the note in question, the

principal debtor, and a party defendant in the suit pending at law.

II. The complainants have a perfect defence at law. Two facts are alledged in order to give court jurisdiction. 1. That David Crofoot is the real owner of the note and the suit prosecuted for his benefit. 2. That Thayer can not be examined in the suit at law. If the first proposition is untrue, then David Crofoot can be used as a witness, and the remedy at law was complete and no necessity for filing this bill existed. The allegations in the bill that the suit at law was prosecuted for the benefit of Crofoot; that he was the real owner, and that the transfer to James Crofoot was colorable and without consideration, is entirely unsupported by proof: and that James was the real owner, and the sale bona fide, is clearly established by the proof. The complainants also waive the answer of D. Crofoot on oath, and show by that, that they seek no discovery from him, and that the real object is to use Thayer's evidence. (9 *Paige,* 197, 634, 578, 226, 227; 8 *id.* 648; 7 *id.* 598.)

III. The complainants being *sureties* only, and not *borrowers,* can not sustain the suit without offering to pay the money loaned and interest. ( *Vilas and Bacon* v. *Jones and Pierce,* 1 *Comst.* 274.)

RUGGLES, J. The case seems to depend on the question whether Thayer is a competent witness in the suit in chancery, which is now in this court on appeal from the decree of the courts below, by which the bill was dismissed. If his testimony be rejected there is no proof of usury, and no ground for coming into the court of chancery to settle the controversy. If the objection to Thayer's examination, as a witness upon the trial at law, rested solely on the technical ground that he was a party to the record, he would seem to be admissible here where that objection does not exist. But if he would have been excluded there on the ground of an interest in the event of the suit, he must be excluded here also. That objection is as fatal here as in a court of law.

If the decree in this case should be made in favor of the com-

[120] plainants, on Thayer's evidence, it would put an end to the action at law without any trial of the issue pending therein, between the plaintiff and Thayer. The defence by one or more of the defendants on the ground of usury is a defence for all. The action is joint and the plaintiff can have no verdict against Thayer, unless he has also a verdict against the sureties. Thayer therefore by his evidence, if it be admitted, defeats the action not only as against his sureties but against himself also.

In this respect the present case differs from that of *Butcher* v. *Forman* (6 *Hill*, 583.) In that case the bankrupt was discharged from any liability in the action, by a *nolle prosequi* as to him. He not only ceased to be a party, but he ceased to have any interest by reason of being a party. Such also, was the situation of the witness in the case of *Aflalo* v. *Fourdrinier*, (6 *Bing.* 306.) He had no remaining interest in the event arising out of the fact that he was originally a defendant; and having relinquished his interest in the surplus of his estate in the hands of his assignee, he was held competent. But Thayer is an incompetent witness by reason of the effect which the decree in this cause may have upon his own direct interest in the action at law in which he is a defendant. This objection does not rest merely on the technical ground that Thayer is a party to that suit, but on the ground of his interest in the event of that suit, which is dependent on the event of this.

According to the case of *Butcher* v. *Forman* (6 *Hill*, 583,) Thayer is incompetent by reason of his interest in the surplus of his estate in the hands of his assignee in bankruptcy. In that case Miller, a bankrupt, was rejected under like circumstances, on the ground that by defeating the recovery he would diminish the claims upon his property, and thus increase the surplus, if any, which might arise in winding up the estate.

But it is contended that Thayer's interest in the surplus is contingent and uncertain, and therefore does not disqualify him. The rule, however, appears to be otherwise established; (1 *Greenl. Ev.* § 392, *and note* 2; 6 *Bing.* 306;) and upon good reason, for if the party objecting to the witness on this ground, were obliged to show that there would be a surplus after paying

Morse *v.* Crofoot.

the bankrupt's debts, the court might be compelled to [121] take an account of the bankrupt's debts and effects, and to receive evidence of fraudulent concealment of his property, for the purpose of ascertaining whether he was competent or not. His evidence will at all times be received to diminish the surplus; and when offered to increase it, the offer should be accompanied by a release.

It is also contended that the decree in this cause, be it either way, can never be used in any proceeding between the holder of the note and the assignee in relation to the fund, and therefore the interest of the witness in the surplus, is an interest in the question, but not in the event of the suit. But I apprehend this is not correct. The third section of the bankrupt act, (*Owen on Bankruptcy, App. p.* 52,) provides that all suits at law or in equity, pending at the time of the decree in bankruptcy in which the bankrupt is a party, may be prosecuted and defended by such assignee to their final conclusion, in the same way and to the same effect as they might have been by such bankrupt. The action at law upon the note in controversy, was pending, when the decree in bankruptcy was made on Thayer's petition; and his assignee became by force of the statute, privy to that suit, and in effect a party to it, so far as regards the binding effect of the judgment as evidence against the bankrupt's estate in his hands. Although he did not actually apply to be made a party on the record, he might have done so. The statute gave him an interest in the event of the suit, and it was his duty to have defended it, if he intended ever to contest the validity of the note. A judgment in that suit against the sureties, would therefore, in my opinion, be conclusive against the assignee to prevent his setting up usury against the claim of the sureties for a dividend thereon. Thayer's evidence, therefore, may have the effect of discharging the fund from the payment of the debt in controversy, which otherwise will become a charge upon it; and he is therefore incompetent.

The assignment by Thayer in October, 1837, to the complainants, of property for the payment of this and other debts, does not alter the case. If the complainants succeed in [122]

avoiding the note on the ground of usury, it will be their duty to refuse payment thereof out of the property in their hands, and the surplus of that fund goes into the hands of the assignee in bankruptcy.

It is made a point for the appellants, that Thayer's testimony was read on the hearing before the vice chancellor, no motion being there made to suppress it; and that the question of his competency therefore, was not before the supreme court for review, and is not now before this court.

The 85th rule of the court of chancery authorizes a motion to suppress the deposition of an incompetent witness, but it does not require such motion to be made except for the purpose of preventing the recovery of the costs of evidence improperly taken. If the competency of the witness be duly objected to before the examiner, his testimony may be objected to at the hearing, without a motion to suppress. The question of Thayer's competency was therefore open for discussion before the vice chancellor, and the bill may very probably have been dismissed on the ground of its inadmissibility. That question was properly before the supreme court, and is an open question here.

Decree affirmed.